## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| Annette Woolf, Individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff | ) ) | Civil Action No. |
| v. | ) ) | |
| Vantage Travel Service, Inc., | ) ) | JURY TRIAL DEMANDED |
| Defendant | ) ) ) | |

## CLASS ACTION COMPLAINT

### INTRODUCTION

Plaintiff, Annette Woolf (who is 65 years old), files this class action against the defendant, Vantage Travel Service, Inc., due to the defendant's failure to refund to her the payments that she made to Vantage for a trip that was cancelled.  Vantage's trip cancellations have increased exponentially over the last several months and, as of today, no trips are currently operating.  Vantage owes thousands of consumers refunds and those unpaid refunds total tens of millions of dollars.  Most of these consumers are senior citizens.

The Plaintiff, and other Vantage customers similarly situated, have contacted Vantage for refunds and all of them have been stonewalled and misled.  On June 1, 2023, Vantage employees received an internal memo that all journeys through August 28, 2023 would be postponed.  There has been no such announcement to consumers or current Vantage customers with upcoming trips.

## PARTIES

1. The Plaintiff, Annette Woolf ("Woolf"), is an individual who resides at 7497 Haystack Loop, Riverside, California.

2. The Defendant, Vantage Travel Service, Inc. ("Vantage"), is a Massachusetts company with its principal place of business at 90 Canal Street, Boston, Massachusetts.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because at least one Class member is of diverse citizenship from Defendant; there are more than 100 Class members nationwide; and the aggregate amount in controversy exceeds $5,000,000 and minimal diversity exists.

4. Venue is proper in this Court pursuant to 28 U.S.C. section 1391 because a substantial portion of the events giving rise to the Plaintiff's and the Class' cause of action occurred in this judicial district and division and the Defendant is incorporated in Massachusetts.  The Court also has personal jurisdiction over the Defendant because it transacts substantial business in the Commonwealth of Massachusetts daily and is incorporated here.

## FACTS

5. Vantage is a tour operator who markets and sells its all-inclusive tours with airfare, all over the world.  Vantage is millions and millions of dollars in debt to elderly consumers with unpaid refunds, yet are continuing to sell trips, cancel trips, and let these unpaid refunds pile up. Its debt dates back, at least, to 2017-2018.

6. Vantage has a heavy reliance on advance payments from its customers.  Vantage encourages its customers to pay with cash, like ACH or e-checks, and offers discounts on the trips if paid in advance with cash.  Vantage's client demographic are elderly individuals who are over 60.

7. Vantage reported that a ransomware attack occurred on April 20, 2023, yet it took days for any communication from Vantage.  At about the same time, Vantage began cancelling many trips, stating this was unrelated to the attack. The cancellations started with all M/S River Splendor tours operating in April, 2023: Best of Holland & Belgium: Spring Tulips & Culinary Treats.

8. From there, the cancellations increased to where we are now, with no trips currently operating. Vantage reportedly owes money to vendors, contracted overseas staff, as well as consumers, and there are thousands of consumer refunds that total in the millions of dollars.  There are also many consumers waiting to see if their scheduled trips will operate.

9. Customers are not advised of trips cancellations until a day or so prior to the trip; some even find out once they have reached their overseas destination.  Calls to Vantage are fruitless: customers are advised their trip is still going, until a couple of days prior when Vantage cancels the airline reservations, and customers learn their trip of a lifetime is cancelled.

10. Vantage's ship, "River Splendor", has reportedly not been released from the river management company (River Advice in Germany) due to unpaid debt and all "Splendor trips" to date have been cancelled.  In addition, Vantage has cancelled Portugal/Spain river cruises, land tours, Egypt trips due to unrest in the Middle East (yet other reputable

companies continue to operate Egypt trips), all Coastal Norway trips, and upcoming
voyages on the leased "Ocean Odyssey" and "Ocean Explorer".

11. Vantage's leased ocean ships from SunStone Maritime Group ("SunStone") in Miami,
Florida have just repositioned without passengers to Caen, France ("Ocean Explorer" and
"Ocean Odyssey"). See location on http://www.cruisemapper.com.[1]  Upcoming trips
have been cancelled, yet Vantage is continuing to sell trips and take payments for all
above trips that Vantage has not been able to operate due to their financial status.  It is
believed that SunStone repossessed these ships due to unpaid debts.

12. Throughout 2022 and 2023, Vantage cancelled, rescheduled and postponed numerous
cruises and tours.  Initially Vantage gave excuses like "ships were not ready", "political
unrest", "docks damaged" or "low water levels" but eventually Vantage just cancelled the
trips.  When travelers attempted to get a refund, many were shocked to learn no insurance
coverage was provided by Allianz (the insurance provider that Vantage charged its
customers for to obtain trip insurance) for the situation where Vantage cancelled the trip.
Allianz has subsequently terminated its relationship with Vantage.  When customers
attempted to get a refund from Vantage, they were given the runaround.

13.  Despite that Vantage's ships are not sailing, Vantage is not informing its customers of
the truth.  Instead, Vantage's customers are receiving last-minute cancellation
notifications – sometimes at the airport as they are preparing to check in for flights that
Vantage never paid for.

14. It is unknown when, or if, Vantage expects to resume operations, yet it is known that
Vantage is still actively selling trips as well as promoting "Last-Minute Travel Deals" on

---

[1]  Last visited on June 4, 2023.

its website.  These "deals" must be paid in full at the time of reservation with electronic

check transfer.  At the same time, Vantage continues to cancel cruises and tours,

sometimes with just 48 hours' notice.  Customers have been stranded overseas without

flights and hotels.  Just a few days ago, Vantage was offering a 25% discount on all trips

that were fully-paid in cash by May 31.

15. Woolf, who is 65 years old, purchased her trip on December 15, 2021.  She booked a trip

to Ireland that was scheduled to leave on May 26, 2023.  She was going on the trip with

her two cousins (who are both senior citizens).  She paid a total of $18,099 for the trip.

On December 15, 2022, she paid, via ACH,  $2,232.00 to Vantage as an initial deposit.

On February 18, 2022, she paid the balance due to Vantage, again via ACH, of

$13,631.00.  She paid the $13,631.00 balance early to receive a discount from Vantage.

On January 25, 2023, she paid $2,236.00 for upgrade to business class on American

Airlines.  She also paid $1,962 for travel insurance through Allianz.

16. On Friday, April 21, 2023, Woolf was informed by Vantage on its website and in an

email that Vantage had experienced an alleged ransomware attack.  Woolf attempted to

make calls to Vantage, leaving several messages expressing her concern, as her American

Airline tickets had disappeared off her American Airlines app and the Vantage, "My

Portfolio".  She also called American Airlines and was told the airline tickets were

cancelled due to non-payment by Vantage even though Woolf had already paid Vantage

for the flights.

17. Woolf was called by a Vantage customer service representative on May 3, 2023 and

assured that the airline tickets were reissued and paid for.  Woolf verified with American

Airlines that there were tickets and that they had been paid.  New tickets with different flights reappeared on Woolf's American Airlines app and her "My Portfolio".

18. After Woolf began hearing stories of last-minute cancellations and non-payment to tour companies and crew, she reached out to Vantage to confirm her cruise ship and hotels were paid for and the trip was still a "go".  Vantage assured Woolf in an email that Vantage owned the ships and not to worry.  Woolf has since learned that Vantage does not own the ships, but that they are owned by SunStone and leased to Vantage.

19. On May 25, 2023, Woolf received a call from "Nick" at Vantage telling her the trip was postponed.  There is, however, no future date for the trip and all trips are now cancelled through at least August, 2023.  Woolf requested a full refund and Nick said it would be noted and sent to Vantage's accounting department.  Within a few hours, Woolf's airline tickets disappeared again from her "My Portfolio" and a call to American Airlines confirmed the tickets had been cancelled by Vantage and the refunded ticket amount would also be returned to Vantage, not Woolf.  Woolf's "My Portfolio" disappeared as well.  All traces of her invoices, itineraries and other information previously in her "My Portfolio" were gone.

20. Woolf learned that Allianz would not provide a refund because of the circumstance and, instead, she needed to deal with Vantage regarding any refunds.

21. Other consumers, Elizabeth and James Keal, purchased a trip to Southern Europe, Italy, France, Monaco and Spain.  James is 71 years old.  Elizabeth is 68 years old.  Vantage offered a discount to travelers who paid for their trips in advance.  Thus, Elizabeth and James Keal paid $15,000 each for their trip in September of 2022.  The trip was scheduled to take place on May 13, 2023.  The night before the trip (May 12th), without

any prior notice, Vantage cancelled the trip.  Vantage has refused to refund the $30,000

to Elizabeth and James Keal.  James Keal has left, at least, eight voicemail messages with

Vantage customer service and has not gotten a single return call.  He has also sent

numerous emails to customer service and has not gotten a response from Vantage.

22. Likewise, another consumer, Linda Cima, who is 71 year old, purchased a trip to

Southern Europe, Italy, France, Monaco and Spain for her and her niece, Ava Krall, (as a

very special graduation present to her niece).

23. Cima paid $34,634 for the trip two years ago.  The trip was scheduled to take place on

May 13, 2023.  Several days before May 13, Cima drove ten hours alone from her home

in Tennessee to pick-up her niece in Greensburg, Pennsylvania so that they could attend

the trip together.  They were flying from Pittsburgh, Pennsylvania to Rome, Italy at 9:30

a.m. on May 13, 2023.  At 7 p.m., the night before their flight was to depart to Rome,

Vantage cancelled the trip.  Vantage has refused to refund Cima the $34,634 that she paid

for the trip and has been completely unresponsive.  Cima's niece, Ava, is devasted.

24. On June 1, 2023, Vantage employees received an internal memo that all journeys through

August 28, 2023 would be postponed.  There has been no such announcement to

consumers or current Vantage customers with upcoming trips.

## CLASS ACTION ALLEGATIONS

25. Plaintiff brings this action as a class action on behalf of herself and all others similarly

situated as members of a Class defined as follows:

> All persons who purchased trips from Vantage and who had their trips cancelled
> between June 2019 and today and have not received a refund from Vantage for
> the cancelled trips.

26. Plaintiff meets the prerequisites of Rule 23(a) to bring this action on behalf of the Class because:

    a. <u>Numerosity</u>. The members of the Class are so numerous that joinder of all members in one action is impracticable. The precise number of Class members is unknown to Plaintiff at this time, but the Class likely numbers in the thousands.

    b. <u>Common Questions of Law and Fact</u>. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. These common contentions, the determinations of which will resolve issues central to the validity of each Class member's claim, include the following:

        i.      Whether the Defendant sold trips to customers that it knew would not occur;

        ii.     Whether the Defendant failed to refund the amounts paid to it for trips that the Defendant cancelled;

        iii.    Whether Defendant negligently misrepresented that Class members would be provided a trip upon payment;

        iv.    Whether Defendant violated a contract with Plaintiff and the Class;

        v.      Whether Defendant's conduct was unfair and deceptive as to the Plaintiff and the Class;

        vi.    Whether Plaintiff and the Class are entitled to damages, punitive damages, and/or injunctive relief.

c. <u>Typicality</u>.  Plaintiff's claims are typical of the claims of the Class members because Plaintiff purchased a trip from the Defendant that was cancelled and has not received a refund.

d. <u>Adequacy</u>.  Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class members she seeks to represent. Plaintiff has retained competent counsel experienced in class actions and privacy litigation and Plaintiff has no interests antagonistic to or in conflict with those of the Class. Plaintiff's counsel is committed to vigorously prosecuting this action on behalf of the Class and has the financial resources necessary to do so.

27. Class action status is warranted under Rule 23(b)(3) because questions of law or fact common to members of the Class predominate over any questions affecting only individual members and a class action is superior to the other available methods for the fair and efficient adjudication of this controversy.

## COUNT I
## (Breach of Contract)

28. Woolf and the Class repeat and reallege the allegations set forth above.

29. Woolf and the Class entered into a contract with Vantage.

30. Woolf and the Class performed under the contract.

31. Vantage breached the contract.

32. Woolf and the Class suffered damages.

## COUNT II
## (Breach of the Implied Covenant of Good Faith and Fair Dealing)

33. Woolf and the Class repeat and reallege the allegations set forth above.

34. Every contract contains an implied covenant of good faith and fair dealing.

35. Through the actions set forth above, Vantage breached the implied covenant of good faith and fair dealing contained in the contract.

36. As a result of Vantage's breach, Woolf and the Class suffered damages.

## COUNT III
### (Promissory Estoppel)

37. Woolf and the Class repeat and reallege the allegations set forth above.

38. Vantage made a clear and unambiguous promises to Woolf and the Class relative to, among other things, the purchased trips.

39. Vantage promised Woolf and the Class that it would be provided with the trip that they contracted and paid for.

40. Woolf and the Class reasonably and foreseeably relied on Vantage's promise and, among other things, paid for the trip and made pre-trip arrangements.

41. As a result, Woolf and the Class suffered damages.

## COUNT IV
## (Unjust Enrichment)

42. Woolf and the Class repeat and reallege the allegations set forth above.

43. Vantage was enriched at the expense of Woolf and the Class.

44. It is against equity and good conscience to permit Vantage to retain the benefits of, among other things, the payments made for the trips.

## COUNT V
## (Negligent Misrepresentation)

45. Woolf and the Class repeat and reallege the allegations set forth above.

46. As set forth above, Vantage made misrepresentations of material fact regarding Vantage providing the trips to the Plaintiff and the Class.

47. Vantage's misrepresentations were made under circumstances in which Vantage ought to have known their falsity.

48. Vantage's misrepresentations were made with the intent to induce Woolf and the Class to act on them.

49. Woolf and the Class justifiably relied on Vantage's misrepresentations.

50. Woolf and the Class suffered damages

## COUNT VI
## (Violation of G.L. c.93A, sections 2 and 9)

51. Woolf and the Class repeat and reallege the allegations set forth above.

52. At all relevant times hereto, Vantage was a seller of travel services engaged in trade or commerce within the Commonwealth of Massachusetts.

53. Vantage contracted with Woolf and the Class for trips.

54. Woolf and the Class paid Vantage for the trips.

55. Woolf and the Class complied with the terms of their contract with Vantage.

11

56. Vantage has a pattern and practice of refusing to refund its customers for travel packages – in violation of the terms of its contract with them.

57. At the time of contracting with Woolf and the Class, Vantage knew, or should have known, that Vantage was either unwilling or unable to adhere to the terms of its contract with them with regards to providing its customers with contractually required refunds for cancelled travel packages.

58. Vantage stonewalled Woolf and the Class when they sought refunds and were misled as to the reasons for the cancellation and delay as to the refunds.

59. Vantage's conduct was made in bad faith, with the intent of maximizing its own profits, and to secure unbargained-for benefits not contemplated by the terms of the contract with Woolf and the Class.

60. 940 Mass. Code Regs. 15.03 prohibits sellers of travel services conducting business in the Commonwealth from making any misrepresentation to consumers regarding, among other things, "the terms of any cancellation or refund policy … that may apply to a consumer's purchase of travel services …."

61. Violations of 940 Mass. Code Regs. 15.03 are a *per se* violation of M.G.L. c. 93A, § 2(a) and constitute an unfair and deceptive trade practice under Massachusetts law.

62. By their refusal to provide Woolf and the Class with the refund due to them under the terms of the contract and their bad-faith tactics (as described above), Vantage has engaged in unfair and deceptive trade practices within the Commonwealth of Massachusetts. Such conduct is made worse because it is part of a clear pattern and practice of entirely disregarding the contractual rights of consumers.

63. As a result, Woolf and the Class are entitled to treble damages, interest, costs and attorney

fees in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, respectfully requests the following relief:

1.      that this Court certify this action as a Class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3), and appoint Plaintiff, **Annette Woolf**, and her counsel to represent the Class;

2.      that this Court enter judgment in favor of Plaintiff and the Class, and against Defendant Vantage under the legal theories alleged herein;

3.      that this Court award damages under the common law and statutory theories alleged herein;

4.      that this Court award attorneys' fees, expenses, and costs of this suit;

5.      that this Court award punitive damages and injunctive relief to prevent this result from re-occurring;

6.      that this Court award Plaintiff and the Class pre-judgment and post-judgment interest at the maximum rate allowed by law; and

7.      that this Court award such other and further relief as it may deem just and appropriate.

## DEMAND FOR JURY TRIAL

The Plaintiff hereby demands a jury trial on all issues so triable.

Annette Woolf
By her attorney


/S/  Ronald W. Dunbar, Jr.

Ronald W. Dunbar, Jr.
DUNBAR LAW P.C.
10 Post Office Square
Boston, MA 02109
Tel: (617) 244-3550
Email: dunbar@dunbarlawpc.com


Dated:  June 4, 2023